UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LARRY DILLARD,                                   )<br>                                                        )<br>        Plaintiff,                              )<br>                                                        )<br>        v.                                        )<br>                                                        )<br>MICHAEL J. ASTRUE,                        )<br>Commissioner of the Social              )<br>Security Administration,                  )<br>                                                        )<br>        Defendant.                          )<br>_____ ) | Case No. CV 07-03487 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of bilateral shoulder disorder, diabetes mellitus, obesity, and hypertension, but that plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform his past relevant work as a courier, apartment manager, and security guard. [See JS 2; Administrative Record ("AR") 17].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in disregarding the opinion of his treating workers' compensation physician, Dr. Sobol. [JS 3-4, 8-10].

The record includes treatment reports from Dr. Sobol, a board-certified orthopedic surgeon, covering the period from March 2002 until September 2005. [AR 88-160, 240-265]. Dr. Sobol initially evaluated plaintiff in March 2002 for complaints of bilateral shoulder and neck pain stemming from a work-related injury in December 2001. Based on plaintiff's history, a physical examination, and review of plaintiff's medical records, Dr. Sobol diagnosed right shoulder tendinitis, bursitis, and impingement syndrome with possible rotator cuff tear; compensatory left shoulder periscapular strain; and compensatory cervical pain. [AR 151-160]. Dr. Sobol opined that plaintiff was "temporarily totally disabled." [AR 158].

In California workers' compensation parlance, a "period of temporary total disability" means "that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention." W. M. Lyles Co. v. Workmen's Comp. Appeals Bd., 3 Cal.App.3d 132, 136 (1969)); see Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996)(stating that an individual is "temporarily totally disabled" under California

2

workers' compensation law if that individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury," and that a claimant who applies for temporary total disability benefits "necessarily assert[s] that she [is] unable to work") (internal quotation marks and citations omitted); see also Cal. Labor Code § 4653.

Provided that the temporary total disability extends for at least twelve consecutive months, the workers' compensation definition of temporary total disability is consistent with the definition of disability under the Social Security Act. See 42 U.S.C. § 423(d)(1)(A)(defining "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 42 U.S.C. § 1382c(a)(3)(A) (same)).

During plaintiff's April 2002 visit, Dr. Sobol reviewed a previous MRI study, which did not indicate the presence of a complete rotator cuff tear but otherwise caused no change in Dr. Sobol's diagnoses. [AR 147]. He recommended, and with plaintiff's consent sought authorization for, right shoulder surgery. Dr. Sobol also prescribed a course of physical therapy along with medications for inflammation, pain, and muscle spasms (namely, Naprosyn, Darvocet, Biofreeze, and Robaxin). [AR 147-148, 158]. He opined that plaintiff remained temporarily totally disabled. [AR 148].

Dr. Sobol performed right shoulder surgery on June 6, 2002. He opined that plaintiff remained temporarily totally disabled during his recovery from surgery. Dr. Sobol also noted continuing abnormal findings with respect to plaintiff's left shoulder, and he eventually performed left shoulder surgery on September 4, 2003. [See AR 9-143]. Dr. Sobol opined that plaintiff remained temporarily totally disabled until March 26, 2004, when he rated plaintiff's condition "permanent and stationary."[1] [AR 93-102, 104-105, 107, 109-110, 113, 115-116, 119, 124, 141, 148, 158; see AR 127-136].

After plaintiff's permanent and stationary rating, he continued to see Dr. Sobol for treatment at regular intervals until September 2005. Dr. Sobol opined that plaintiff's condition remained permanent and

---

[1] A disability is considered "permanent and stationary" for workers' compensation purposes "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish v. Workers' Comp. Appeals Bd., 89 Cal.App.4th 1284,1290 n.7 (2001) (quoting Cal.Code Regs., tit. 8, § 10152).

3

1  stationary. [AR 243-260].  During the hearing, plaintiff testified that while his right shoulder was "pretty
2  good," he had residual pain and limitation in his left shoulder. [AR 318]. Dr. Sobol had advised him that
3  he was "just going to have to live with the pain" unless he elected to have another surgery, and Dr. Sobol
4  could not guarantee that another surgery would be successful. [AR 318].  Plaintiff said that he did not want
5  more surgery. [AR 318].

6       In general, the opinions of a claimant's treating physician with respect to the existence of an
7  impairment or the ultimate issue of disability are entitled to more weight than the opinions of doctors who
8  do not treat the claimant. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d
9  1144, 1148 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The preference for treating
10 source opinions is founded on the recognition that "treating physicians are employed to cure and thus have
11 a greater opportunity to know and observe the patient as an individual. . . ." Edlund v. Massanari, 253 F.3d
12 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social
13 Security Ruling ("SSR") 96-2p, 1996 WL 374188)). When a treating physician's medical opinion as to the
14 nature and severity of an individual's impairment is well-supported and not inconsistent with other
15 substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632;
16 Edlund, 253 F.3d at 1157; SSR 96-2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. A treating
17 physician's opinion that is contradicted by substantial evidence in the record, such as the opinion of an
18 examining physician based on independent clinical findings, is not entitled to controlling weight.  That
19 opinion, however, is "still entitled to deference" and must be evaluated using the factors set forth in the
20 Commissioner's regulations. Orn, 495 F.3d at 632 (quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157;
21 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[2] If contradicted by that of another doctor, a treating or

---

23   [2] Those factors include the length of the treatment relationship, the frequency of examination
by the treating physician, and the nature and extent of the treatment relationship between the patient
24 and the treating physician. Additional factors relevant to evaluating any medical opinion include
the degree to which the opinion is supported by other evidence in the record, the "quality of the
25 explanation provided" by the physician, the consistency of the medical opinion with the record as
a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a
26 physician has of the Administration's "disability programs and their evidentiary requirements" and
27 the degree of his or her familiarity with other information in the case record. Orn, 495 F.3d at 631;
20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).
28

4

examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The Commissioner's consultative examining physician, Dr. Siciarz, conducted an internal medical examination in November 2005, about eighteen months after Dr. Sobol issued his permanent and stationary report, and about three years and half years after Dr. Sobol began treating plaintiff and opined that he was temporarily totally disabled. Dr. Siciarz concluded that plaintiff could perform medium work. [AR 15-16, 222-226]. The non-examining state agency physician adopted that assessment in December 2005. [AR 230-239].

The ALJ did not accept the examining or non-examining source opinions. [AR 15-16]. Instead, the ALJ "accept[ed] and adopt[ed]" Dr. Sobol's opinion that plaintiff was "precluded from activities requiring heavy lifting, repetitive or forceful pushing and pulling, prolonged and repetitive forward reaching, and repetitive over the shoulder work." [AR 16]. In other words, the ALJ accepted the limitations put forth by Dr. Sobol in his March 2004 permanent and stationary report. [AR 127-134, 243-260]. The ALJ interpreted Dr. Sobol's preclusion against "heavy lifting" to allow a specific maximum lifting capacity of twenty pounds occasionally and ten pounds frequently. [AR 16].

The ALJ correctly rejected the Dr. Siciarz's November 2005 examining opinion in favor of Dr. Sobol's March 2004 treating source opinion, which was well-supported and reflected his specialized, cumulative knowledge of plaintiff's condition gleaned during a significant treatment relationship of two years' duration. Dr. Sobol's permanent and stationary rating indicates that plaintiff is not permanently, totally disabled; however, that rating necessarily applies only at or after the point at which plaintiff "reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish, 89 Cal.App.4th at 1290 n.7; Cal.Code Regs., tit. 8, § 10152. In Dr. Sobol's view, that point occurred on or about March 26, 2004, when he issued his permanent and stationary report.

Plaintiff alleged that he became disabled in December 2001 due to his shoulder injury and other alleged impairments. Although Dr. Sobol's March 2004 permanent and stationary rating indicates that plaintiff is not totally disabled, that opinion applies prospectively only. Therefore, the ALJ erred in failing to articulate reasons for rejecting Dr. Sobol's opinion that plaintiff was "temporarily totally disabled" from

5

March 2002 until March 2004, a period of more than twelve consecutive months. The ALJ's failure to do so constitutes reversible legal error.

**Hypothetical question**

Plaintiff also contends that the ALJ's hypothetical question to the vocational expert was inconsistent with the ALJ's RFC finding, and therefore the ALJ's finding that plaintiff's past relevant work is within his RFC is not supported by substantial evidence in the record. [JS 13].

The ALJ may pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities. . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886; Tackett, 180 F.3d at 1101. A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ's failure to include properly supported limitations in a hypothetical question on which the vocational expert's testimony is based is not harmless error if a "proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ." Robbins, 466 F.3d at 886.

The ALJ's hypothetical question to the vocational expert posited an individual whose limitations included "no more than frequent forward reaching." [AR 333]. Reaching means "extending the hands and arms in any direction." SSR 85-15, 1985 WL 56857, at *7. "Frequent" means occurring from one-third to two-thirds of the time, or up to almost six hours in an eight-hour work day. SSR 83-10, 1983 WL 31251, at *6. The vocational expert characterized plaintiff's past work as that of a courier (Dictionary of Occupational Titles ("DOT") job number 230.663-010), apartment manager (DOT job number 186.167-018), and security guard (DOT job number 372.667-038). The DOT states that all of those jobs require frequent reaching. Plaintiff's work history reports indicate that his actual past jobs as a courier and apartment manager required reaching even more often, up to eight hours a day. [AR 60-61, 67, 79-80]. See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (noting that the claimant has the burden of proving an inability to return to his work as generally or actually performed, and that information from the DOT may

be used to ascertain the demands of an occupation as generally performed). The vocational expert testified that the hypothetical person described by the ALJ could perform the jobs of courier, apartment manager and security guard as defined in the DOT, and the ALJ relied on that testimony to find that plaintiff could perform those jobs "as previously performed and as generally performed in the national economy." [AR 17]. Borrowing from Dr. Sobol's opinion, the ALJ found in his written decision that plaintiff could not engage in "prolonged and repetitive forward reaching." [AR 17]. The ALJ did not say that plaintiff is limited to "no more than frequent forward reaching," as he had done in his hypothetical question. The discrepancy between the way the ALJ described that limitation in his hypothetical question and in his RFC finding creates an unresolved ambiguity. While it is unclear exactly what the ALJ (or Dr. Sobol) meant by "prolonged and repetitive reaching," common experience suggests that someone who cannot perform "prolonged and repetitive reaching" in any direction is unlikely to be able to tolerate reaching forward for up to two-thirds of the workday. If that is correct, the ALJ's hypothetical question and the vocational expert's testimony do not accurately reflect the ALJ's actual RFC finding.

> This ambiguity is significant because reaching is an activity that is required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations.

SSR 85-15, 1985 WL 56857, at *7.

Because the ALJ's hypothetical question does not accurately and unambiguously incorporate the reaching limitation set forth in the ALJ's RFC finding, his finding that plaintiff can perform his past relevant work lacks substantial support in the record.[3]

///

---

[3] In addition, the ALJ's finding that plaintiff could perform his past relevant work as a courier as actually performed is not based on substantial evidence because the uncontroverted evidence shows that plaintiff's job as a courier required him to lift boxes as heavy as 50 pounds occasionally and 25 pounds frequently. [AR 60-61, 66-67, 80]. The ALJ also erred in finding that plaintiff had past relevant work as a security guard because plaintiff held that job from 1980 to 1987, more than 15 years before the July 2006 hearing decision. See 20 C.F.R. § 404.1565(a).

7

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).

The ALJ did not properly evaluate Dr. Sobol's opinion that plaintiff was temporarily totally disabled during the period from March 5, 2002 until March 26, 2004, when his condition became permanent and stationary, and he regained the RFC adopted by the ALJ. There is no conflicting treating source opinion regarding plaintiff's orthopedic limitations during the period of temporary total disability assigned by Dr. Sobol, and the ALJ rejected the subsequent examining and non-examining source opinions, which in any event were not contemporaneous and in other respects were not entitled to the same weight as Dr. Sobol's opinion. Insofar as the period from March 2002 through March 2004 is concerned, remand for further administrative proceedings would serve no useful purpose. Plaintiff is entitled to a closed period of disability and a corresponding award of benefits.

With respect to the period after March 2004, the ALJ did not adequately support his finding that plaintiff could perform his past relevant work with the RFC indicated by Dr. Sobol's March 2004 opinion, which the ALJ adopted. The ALJ, however, may be able to elicit testimony or other evidence demonstrating either that plaintiff's inability to perform "prolonged and repetitive forward reaching" is not actually inconsistent with the description of his past work in the DOT, or that he can perform those jobs despite any

inconsistency. See Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)(holding that the ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles, and that while the DOT does not "automatically trump" conflicting expert testimony, the ALJ must "obtain a reasonable explanation for any apparent conflict"). Even if plaintiff's RFC precludes performance of his past work as defined by the DOT, it is not clear from the record that plaintiff is entitled to benefits. Accordingly, a remand for further administrative proceedings is warranted with respect to whether plaintiff can perform his past relevant work or any other work after March 2004 with the RFC set forth in the ALJ's July 2006 decision.[4]

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed, and the case remanded for the payment of benefits to which plaintiff may be entitled with respect to a closed period of disability from March 2002 through March 2004 and for further administrative proceedings** consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: May 5, 2008

                             ___/ S /___
                             ANDREW J. WISTRICH
                             United States Magistrate Judge

---

[4] This remand order should not be construed to permit the ALJ to revisit or revise that RFC finding.